UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WILLIAMS, individually
and on behalf of all persons similarly situated,

       Plaintiff,

v.                               Case No. 06-10677
                                    Honorable Patrick J. Duggan

SCOTTRADE, INC.,

       Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 24, 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
               U.S. DISTRICT COURT JUDGE

      This action arises out of Defendant Scottrade, Inc.'s online stock trading platform,

Scottrade ELITE.  On January 26, 2006, Plaintiff Michael Williams ("Williams") filed

this putative class action lawsuit  in the Circuit Court for the County of Macomb, State of

Michigan.  Scottrade removed the Complaint to federal court on February 16, 2006,

pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1453.  In his

Complaint, Williams claims the ELITE program provided inaccurate average price per

share information to its customers between September 1, 2004 through January 1, 2005,

due to a software malfunction, causing the customers to suffer monetary loss.  According

to Williams, this malfunction contradicted representations Scottrade made about its

ELITE program in its advertising and marketing and constituted a breach of Scottrade's

contract with its ELITE customers.  Williams alleges the following state-law claims in his

Complaint:

> (I)     breach of contract;
> (II)    unfair and deceptive trade practices in violation of Michigan's Consumer Protection Act, MICH. COMP. LAWS ANN. § 445.901 *et seq.*;
> (III)   negligence;
> (IV)    common law fraud;
> (V)     breach of fiduciary duty;
> (VI)    respondeat superior;
> (VII)   breach of the National Association of Securities Dealers' supervisory rules;
> (VIII)  negligent supervision;
> (IX)    negligent misrepresentation;
> (X)     promissory estoppel;
> (XI)    rescission pursuant to MICH. COMP. LAWS ANN. § 451.810;
> (XII)   securities fraud in violation of MICH. COMP. LAWS ANN. § 451.501;
> (XIII)  unjust enrichment; and
> (XIV)   quantum meruit;

Presently before the Court is Scottrade's motion to dismiss pursuant to Federal

Rules of Civil Procedure 9(b) and 12(b)(6).  The Court held a hearing on Scottrade's

motion on July 13, 2006.

## I.      Factual Allegations

In 1996, Scottrade introduced online trading providing individual investors cost-

efficient securities brokerage services.  On March 25, 2003, Williams completed a

Brokerage Account Application in order to begin using Scottrade's online trading

2

program.  *See* Mot. Ex. 1.  In March 2004, Scottrade launched its ELITE program, a

trading platform for active traders.  Williams alleges that Scottrade's "marketing,

advertising and sales message has consistently" represented the following with respect to

the ELITE platform:

> •It "is reliable, convenient, fast and efficient . . . that its systems were state of the art, that it had superior technology."

> •It "is an advanced trading platform built for the active trader with easy-to-use customizable screens, integrated trading tools and personalized support."

> •It "gives the active trader the tools and services needed to take control of their trading activities with features such as advanced charting, integrated trading tools for stocks and options, streaming NASDAQ Level II quotes, complimentary Dow Jones News and Comtex News, integrated account management tools, and in-depth technical and fundamental research capabilities."

> •It "combines speed, flexability and performance in a platform designed to give the active trader the tools to monitor and trade accounts from one screen using its account linking feature, execute trades in regular hours or in after-hours utilizing real-time positions giving the active trader up to the second profits and losses."

> •It "monitors active traders' balances, trade activity, trade history and financial history all within one integrated platform."

*See* Compl. ¶¶ 29-33.  Williams claims that he began using ELITE based upon these

representations.

Williams alleges that, beginning in September 2004 and continuing through early

January 2005, ELITE provided incorrect average price per share information to its

3

customers.  According to Williams, as a result of the inaccurate information, he sold stock believing the sale would result in a gain, when in fact it resulted in a loss.  Eventually Scottrade discovered that the error was due to a problem in the platform software.

## II.    Applicable Standards

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Construing the complaint in a light most favorable to the plaintiff and assuming that the plaintiff's factual allegations are true, the court must determine whether the complaint states a valid claim for relief.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)(citing *Jenkins v. McKeithen*, 395 U.S. 411, 421-33, 89 S. Ct. 1843, 1848-49 (1969)).  While a court's review generally is restricted to the four corners of the complaint, it "may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998)(quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)); *see also Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 949-50 (6th Cir. 1990)(concluding that the pension plan from which the plaintiffs quoted extensively in their complaint was part of the pleadings before the court  and therefore properly considered by the court in ruling on the defendant's motion to dismiss).

A court may dismiss a claim pursuant to a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232

4

(1984)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).

A motion to dismiss pursuant to Rule 9(b) applies to a plaintiff's claim(s) for fraud or mistake.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P.  9(b).  To satisfy the requirements of Rule 9(b), the Sixth Circuit "requir[es] a plaintiff, at a minimum, 'to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Coffey v. Foamex LP*, 2 F.3d 157, 161-162 (6th Cir. 1993)(quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1395 (W.D. Mich. 1992)).  Reviewing the allegations in the plaintiff's complaint, the court must determine whether the plaintiff sufficiently alleges each particularity requirement with regard to each element of his or her fraud or mistake claim(s).

## III.   Applicable Law and Analysis

### A.   Breach of Contract

In Count I of his Complaint, Williams alleges that Scottrade entered into a written agreement with each of its customers, pursuant to which Scottrade agreed to provide reliable, convenient, fast and efficient brokerage services.  *See* Compl. ¶ 75.  Williams contends that Scottrade breached the agreement when its ELITE program failed to provide its users with accurate average price per share information.  *See id*. ¶¶ 78 & 80. In its motion to dismiss, Scottrade argues that Williams' breach of contract claim fails because "[n]owhere in the text of the Brokerage Account Agreement"– the only written

5

agreement between Scottrade and Williams– "did Scottrade promise to make available a trading platform having the particular characteristics Williams alleges." *See* Def.'s Mot. at 6.  Scottrade further argues that the Brokerage Account Agreement specifically relieves Scottrade of any liability for violations Williams claims.  *See id*.

When Williams opened his brokerage account with Scottrade, he executed a one-page application form which states: "BY SIGNING THIS AGREEMENT I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO ABIDE BY THE TERMS OF THE ACCOMPANYING BROKERAGE ACCOUNT AGREEMENT..." *See* Def.'s Mot. Ex. 1 (capitalization in original).  This language is contained on the application form above the signature line for the applicant and any co-applicant.  Scottrade maintains– and Williams does not dispute– that he only opened one account with Scottrade and that it was from this account that he conducted trading through Scottrade's ELITE program.

Williams fails to point to any language in the Brokerage Account Agreement, or any other agreement, where Scottrade agrees to provide accurate average price per share data or even– as alleged in the Complaint– "reliable, convenient, fast and efficient state of the art computer systems."  If anything, the agreement specifically relieves Scottrade of any liability for errors or malfunctions in its computer programs and any trading losses incurred by its customers.

For example, the opening paragraph of the Brokerage Account Agreement contains the following language:

6

> You understand that we do not give legal, tax or investment advice. *You understand that all orders entered are unsolicited and based on your own investment decisions.* You understand that *you are solely responsible for* all orders entered, including but not limited to trade qualifiers, the number of trades entered, suitability of any trade(s), investment strategies and *risks associated with each trade, and will not hold Scottrade* or any of its employees *liable for those investment decisions.*

*See id*. ¶ 1 (emphasis added).  The agreement further relieves Scottrade of any liability for

losses incurred as a result of certain unexpected events:

> Scottrade will not be liable for losses incurred directly or indirectly by causes beyond its reasonable control including but not limited to . . . any force majeure (e.g. extraordinary weather conditions, fire, flood, earthquake, war, riot, insurrection, communications/power failure, *equipment/software malfunction* or any other act of God).

*See id*. ¶ 15 (emphasis added).  Finally, the Brokerage Account Agreement relieves

Scottrade of liability if it provides inaccurate information:

> You agree as follows:
> . . .
> •that the Data Disseminators [e.g. New York Stock Exchange, NASDQ, the Options Price Reporting Authority, its processor and each of its consultant exchanges that make "Market Data" available] or *Scottrade shall not be liable* to you or to any other person *for any losses* or damage *arising from inaccuracies*, errors, omissions, delays, interruptions or non-performance, *whether or not due to any negligent act or omission* of any Data Disseminator or Scottrade.  In no event shall any Data Disseminator or Scottrade be liable for any incidental, special, indirect or consequential damages, including but not limited to lost profits, trading losses or damages resulting from inconveniences or loss of use of the Service.

*See id*. ¶ 23 (emphasis added).

Williams fails to address these specific contractual provisions in response to Scottrade's motion.  Instead, Williams argues that the Brokerage Account Agreement "fails to address the ELITE trading platform accounts."  *See* Pl.'s Resp. at 19.  In his Complaint, however, Williams acknowledges that he entered into a written agreement with Scottrade and he does not offer any other written agreement between himself and Scottrade with respect to ELITE in response to Scottrade's motion.  Moreover, the terms of the Brokerage Account Application indicate that it governs the relationship between Scottrade and its account holders.  The Court cannot find any term within the agreement stating, or even suggesting, that the agreement only applies to certain Scottrade programs.

Williams also argues in response to Scottrade's motion that the parties' contract contains an implied covenant of good faith and fair dealing which obligated Scottrade to provide accurate average price per share information.  *See id*. at 19-20.  As Williams acknowledges at page 20 of his response, however, such a covenant "cannot be employed, in interpreting a contract, to override express contract terms."  *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990).  As set forth previously, the Brokerage Account Agreement contains express terms relieving Scottrade of liability for software malfunctions, customer investment decisions, and trade losses.

For the above reasons, the Court agrees with Scottrade that, in his breach of contract claim, Williams fails to state a claim for which relief may be granted.  The Court therefore holds that William's breach of contract claim (Count I) must be dismissed.

8

B.     **Breach of Fiduciary Duty**

In Count V of his Complaint, Williams alleges that Scottrade owed its account holders a fiduciary duty and that it breached its duty "when it intentionally failed to implement a trading platform system with capacity to adequately support its [ELITE] trading platform accounts," "when it intentionally failed to report that the [ELITE] trading platform average price per share feature was providing inaccurate information to its . . . customers," and when it made "material misstatements, omissions of fact that its [ELITE] trading platform average price per share feature was provi[di]ng []accurate information to its . . . account customers." *See* Compl. ¶¶ 131-33. This claim fails for two reasons.

First, where a broker lacks discretionary authority with respect to its customers investments, it generally is accepted that no fiduciary duty arises. *J.C. Bradford Futures, Inc. v. Dahlonega Mint, Inc.*, No. 89-5581, 1990 WL 95625, at *5 (6th Cir. July 11, 1990)(unpublished op.); *see also Christian Mem'l Cultural Center, Inc. v. Alan B. Lancz & Assoc.*, No. 92-1222, 1993 WL 84471, at *3 (6th Cir. Mar. 23, 1993)(unpublished op.); *Vestax Sec. Corp. v. Desmond*, 919 F. Supp. 1061, 1072 (E.D. Mich. 1995)(citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952-53 (E.D. Mich. 1978), *aff'd* 647 F.2d 165 (6th Cir. 1981)). It is clear from Williams' Complaint, as well as the terms of the Brokerage Account Agreement, that Scottrade offered a platform(s) for its customers to conduct on-line trading, but that Scottrade in no way advised its customers or made decisions for its customers with respect to their investments. But even

9

if Scottrade owed Williams and its other ELITE customers a fiduciary duty, its duty could be modified by contract. *De Rance v. Paine, Webber, Inc.*, 872 F.2d 1312, 1321 (7th Cir. 1989)(citing *Chisper v. Kohlmeyer & Co.*, 600 F.2d 1061, 1066-67 (5th Cir. 1979)). The plain language of the Brokerage Account Agreement relieved Scottrade of any liability for software malfunctions and trade losses.

### C.    Promissory Estoppel, Unjust Enrichment, and Quantum Meruit

Williams alleges three equitable claims in Counts X, XIII, and XIV of his Complaint.  In those claims, Williams asserts that Scottrade breached its promise to "provide fast, reliable, efficient updates to the average price per share feature included in its E[LITE] trading platform accounts." *See, e.g.,* Compl. ¶¶181, 223, 230-233.  As Williams acknowledges, however, "[a] contract will be implied only if there is no express contract . . . There cannot be an express and implied contract covering the same subject matter at the same time."  Pl.'s Resp. at 21 (citing *Campbell v. City of Troy*, 42 Mich. App. 534, 537 (1972)); *see also Justus v. Webb*, 634 S.W.2d 567, 570 (Mo. Ct. App. 1982)(citing *Goldstein & Price v. Tonkin & Mondi*, 974 S.W.2d 543, 550 (Mo. 1998))(same)[1].  As there is an express contract addressing the alleged duties on which Williams' promissory estoppel, unjust enrichment, and quantum meruit claims are premised, the Court agrees with Scottrade that these claims fail.

---

[1]The Court refers to Missouri law because the Brokerage Account Agreement contains a choice of law provision indicating that Missouri law governs the parties' agreements and enforcements.  *See* Def.'s Mot. Ex. 1 ¶ 6.

**D.      Claims Alleging Unintentional Torts**

Williams alleges the following unintentional torts: negligence (Count III); respondeat superior liability for the ELITE trading platform program employees' failure to correct, fix, and/or repair the program's average price per share feature (Count VI); negligent supervision in failing to correct inaccurate advertisements and representations regarding the ELITE program (Count VIII); and negligent misrepresentation with respect to marketing, advertising, and sales messages concerning the ELITE program (Count IX). In its motion to dismiss, Scottrade argues that these claims are barred by the economic loss doctrine. Failing to address that doctrine and focusing instead on Scottrade's contractual duties to him, Williams argues in response that he sufficiently alleges the elements of his unintentional tort claims.

The Michigan Supreme Court has explained the economic loss doctrine as follows:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Niebarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 520-21, 486 N.W.2d 612 (1992)(internal citations and quotation marks omitted). *Niebarger* arose in the context of a sale governed by the Uniform Commercial Code; however, Michigan courts have not

11

limited the principles of the case to the sale of goods. *See, e.g., Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 559 N.W.2d 647 (1997)(finding that telephone service customer's negligence action based on alleged problems with the defendant's service did not allege a breach of a duty distinct from breach of contract and therefore holding that the plaintiff's tort action failed); *Huron Tool & Eng'g Co. v. Precision Consulting Servs. Inc.*, 209 Mich. App. 365, 374, 532 N.W.2d 541, 546 (1995)(noting that "[a]lthough the Supreme Court's discussion [in *Niebarger*] was linked closely to the UCC context of the case, the doctrine is not limited to the UCC.")

In determining whether a party may pursue a tort action against another party where the parties' relationship is governed by a contract, the Michigan Supreme Court in *Niebarger* focused on whether the duty allegedly breached arises from tort or contract:

> "The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropraite for determining claims for consequential damage that the parties have, or could have, addressed in their agreement."

*Id*. at 521, 486 N.W.2d at 615 (quoting *Spring Motors Distr., Inc. v. Ford Motor Co.*, 98 N.J. 555, 579-80, 489 A.2d 660 (1985)). As the Michigan Supreme Court more succinctly explained recently: "the threshold inquiry is whether the plaintiff alleges a

violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp.*, 454 Mich. at 84. 550 N.W.2d at 658.  Stated differently, "'As a general rule, there must be some active negligence or misfeasance to support a tort.  There must be some beach of duty distinct from breach of contract.'" *Id.* at 83, 550 N.W.2d at 657 (quoting *Hart v. Ludwig*, 347 Mich. 559, 563, 79 N.W.2d 895 (1956)).

Reviewing the allegations in Williams' Complaint, as well as his restatement of his allegations in response to Scottrade's motion, *see* Pl.'s Resp. at 25-26, it is clear to this Court that the duties Williams alleges Scottrade owed to him and which he alleges Scottrade breached, arise from the parties' contractual relationship.  In other words, Williams simply is asserting that Scottrade entered into a contract with its ELITE customers to provide them with certain services or a certain product and failed to fully perform according to the terms of its promise.  As the Michigan Supreme Court stated in *Rinaldo's Construction*:

> While plaintiff's allegations arguably make out a claim for 'negligent performance' of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship.

454 Mich. at 85, 559 N.W.2d at 658.  The Court therefore agrees with Scottrade that Williams' unintentional tort claims must be dismissed.

### E.    Claims Alleging Fraudulent Conduct

In the following claims, Williams alleges that Scottrade engaged in fraudulent

13

conduct: unfair and deceptive trade practices in violation of the Michigan Consumer

Protection Act (Count II); common law fraud (Count IV); negligent misrepresentation

(IX); rescission due to violations of the Michigan Blue Sky Law (Count XI); and

securities fraud in violation of the Michigan Blue Sky Law (Count XII).  All five claims

are based on Williams' assertion that Scottrade made statements and representations

concerning the speed, reliability, and efficiency of its ELITE program which were false

because the program provided inaccurate average price per share information.  *See, e.g.,*

Compl. ¶¶ 114-21, 164-168, 201 & 218.  Scottrade contends that Williams' claims

alleging fraud must be dismissed because he fails to plead the circumstances constituting

Scottrade's alleged fraud or mistake with sufficient particularity to satisfy Rule 9(b) of

the Federal Rules of Civil Procedure.  As indicated above, the Court is dismissing one of

these claims, Count IX, pursuant to the economic loss doctrine.

As set forth previously, Rule 9(b) requires a plaintiff alleging fraud to set forth the

time, place, and content of the particular representations on which he or she allegedly

relied.  *See Coffey, supra.*  In his Complaint, Williams alleges that Scottrade represented

the accuracy of its average price per share information generally in its "advertisements,

marketing materials, and sales message."  Williams fails to identify the representation(s)

made by Scottrade on which he allegedly relied with any specificity.  In fact, he does not

allege even in general terms any representation by Scottrade concerning the average price

share information provided by its ELITE program.  Williams does not allege with any

specificity where or when Scottrade made the alleged misrepresentations.  Williams refers

14

to Scottrade's website, but again does not set forth any specific statements on the site on

which he relied in deciding to conduct trading using ELITE.  Without knowing more

specifically the statements on which Williams allegedly relied, Scottrade and this Court

cannot evaluate whether they are actionable representations or whether they constitute

mere puffery.[2]  *See, e.g., Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,

326 F.3d 687, 699-700 (6th Cir. 2003)(explaining in context of Lanham Act false

advertising claim that some statements may constitute mere puffery which is not

actionable); *Corely v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008-09 (7th

Cir. 2004)(explaining that certain highly subjective expressions only constitute puffery

upon which no reasonable person would rely in making decisions).  The Court therefore

agrees with Scottrade that Williams' fraud claims fail to comply with the requirements of

Rule 9(b).

### F.    Breach of Supervisory Rules

In Count VII of the Complaint, Williams alleges that Scottrade's conduct violated

the National Association of Securities Dealers' Rules of Fair Practice ("NASD Rules").

Scottrade seeks dismissal of this claim, contending that there is no private cause of action

under the NASD Rules.  *See* Def.'s Mot. at 11 (citing *GMS Group LLC v. Benderson*, 326

F.3d 75, 82 (2d Cir. 2003)).  Courts within the Sixth Circuit have reached the same

---

[2]As indicated, it also is not apparent whether any of the statements on which
Williams alleges he relied make any representation regarding the accuracy of the average
price per share information on Scottrade's ELITE program.

15

conclusion.  *See, e.g., Vennittilli v. Primearica, Inc.*, 943 F. Supp. 793, 797 (E.D. Mich. 1993)(citing *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990)); *Lantz v. Private Satellite Television, Inc.*, 813 F. Supp. 554, 556 (E.D. Mich. 1993); *Kirkland v. E.F. Hutton & Co.*, 564 F. Supp. 427, 443 (E.D. Mich. 1983).  In his response, Williams ignores this authority and Scottrade's argument and presents no contrary authority; instead, Williams merely restates his claim that Scottrade failed to comply with its affirmative obligations under the NASD Rules, as well as New York Stock Exchange Rule 405.  The Court therefore concludes that this claim must be dismissed.

**IV.     Conclusion**

For the reasons set forth above, the Court finds that Williams fails to state a claim upon which relief may be granted with respect to all of the claims in his Complaint, except his claims alleging fraud: Counts II, IV, XI, and XII.  In his claims premised on fraud, however, Williams fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  The Court therefore is dismissing Williams' Complaint in its entirety.[3]

Accordingly,

**IT IS ORDERED**, that Scottrade's motion to dismiss is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Michael P. Marsalese, Esq.
Thomas E. Douglass, Esq.
Lisa A. Brown, Esq.

---

[3]The Court therefore denies as moot Williams' pending motion for class certification.

17